UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

|   |   |   |
|---|---|---|
| DEWITT INSURANCE, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | No. 4:13-CV-2585 JAR |
| v. | ) ) ) | |
| GREGORY R. HORTON, et al., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the court on Defendants Gregory R. Horton and Sarah A. King's Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim Upon Which Relief Can Be Granted And To Decline Supplemental Jurisdiction of State Claims (ECF No. 13).[1] On February 26, 2014, Plaintiff filed a five-count Verified Amended Complaint for Damages ("Amended Complaint"). (ECF No. 12). Defendants argue that Plaintiff fails to state a claim as to the federal causes of action under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§1030, *et seq.*, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1961, *et seq*. In addition, Defendants argue that the state law fraud claims (fraudulent concealment against Horton, fraudulent concealment against King) must be dismissed because the claims lack specificity required by Fed.R.Civ.P. 9(b) and fail to properly

---

[1] Defendants previously filed a Motion to Dismiss Plaintiff's Complaint (ECF No. 7), but Plaintiff filed an Amended Complaint (ECF No. 12), which is now the operative complaint. Accordingly, the Court denies Defendants Gregory R. Horton and Sarah A. King's Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim Upon Which Relief Can Be Granted And To Decline Supplemental Jurisdiction of State Claims (ECF No. 7) as moot.

allege causation or damages. Finally, Defendants assert that the Court should decline to exercise supplemental jurisdiction as to the state law claims.

## BACKGROUND[2]

Dewitt Insurance, Inc. ("Dewitt") is an insurance management company. (Verified Amended Complaint for Damages ("Amended Complaint"), ECF No. 12, ¶8). Horton worked for Dewitt as an independent agent and as a "producer" from March 20, 1998 through June 30, 2011. (Id., ¶¶9, 10).[3] During some periods, Horton worked for DeWitt as a sole proprietor and, during other periods, he worked through Zigzak, Inc. ("Zigzak") and Cindeb, Inc. ("Cindeb").[4] (Id., ¶10). Horton led Dewitt to believe that he owned both Zigzak and Cindeb. (Id.)

In 2000, Horton was working as a sole proprietor and he told DeWitt's John DePond that he was considering forming a company for his insurance business. (Id., ¶11). DePond told Horton that he could incorporate his business subject to some conditions. (Id., ¶12). Specifically, DePond told Horton that he had to notify DeWitt prior to transferring any ownership interest in his book of business to anyone else. (Id.)

Around the time of this conversation with DePond, on April 10, 2000, Horton formed Zigzak. (Id., ¶13).[5] Despite the admonition to the contrary, Horton made his daughter, Sarah King, the sole shareholder of Zigzak. (Id., ¶15). King was only 17 years old when Zigzak was

---

[2] When ruling on a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim, the Court must take as true the alleged facts and determine whether they are sufficient to raise more than a speculative right to relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

[3] Neither party defines what a "producer" is in this context.
[4] None of the claims in the Amended Complaint relate to Cindeb.
[5] DeWitt alleges that Horton chose to make his daughter the owner of Zigzak so that if Horton and his wife, Debora Horton, divorced then his wife would not be eligible to receive the assets of Zigzak. (Amended Complaint, ¶12).

formed. (Id., ¶16). King has at all times had access to all of the information of Zigzak and actively participated in Zigzak's activities and business decisions. (Id., ¶¶17-18).

DeWitt alleges that Horton and King actively concealed from DeWitt the fact that King was the owner of Zigzak and was actively involved in the management of Zigzak. (Id., ¶21).

DeWitt first learned that King was the owner of Zigzak in December 2013. (Id., ¶22). DeWitt claims that it would not have agreed to do business with Zigzak if DeWitt had known that King owned and controlled Zigzak. (Id., ¶25). Or, if DeWitt had known that King owned Zigzak, DeWitt would have paid Zigzak at most 60% sales commissions, instead of the 80% sales commissions that it paid. (Id.). DeWitt claims that Horton and King's concealment of King's ownership interest and control of Zigzak caused DeWitt to defraud it into paying Zigzak at least 33.33% more commissions than it should have received, based upon King's ownership and control. (Id., ¶29).

In its Amended Complaint, DeWitt alleged the following causes of action: Fraudulent Concealment against Defendant Horton (Count I), Violation of the Computer Fraud and Abuse Act, 18 U.S.C. §1030, *et seq.* against Defendant Horton (Count II), Fraudulent Concealment against Defendant King (Count III), Violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, *et seq.* against Defendants Horton and King (Count IV), and Civil Conspiracy against Defendants Horton and King (Count V),

## STANDARD FOR MOTION TO DISMISS

In ruling on a motion to dismiss, the Court must view the allegations in the Complaint liberally in the light most favorable to Plaintiff. Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008) (citing Luney v. SGS Auto Servs., 432 F.3d 866, 867 (8th Cir. 2005)). Additionally, the Court "must accept the allegations contained in the complaint as true and draw

all reasonable inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating the "no set of facts" standard for Fed. R. Civ. P. 12(b)(6) found in Conley v. Gibson, 355 U.S. 41, 45–46 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555; Huang v. Gateway Hotel Holdings, 520 F. Supp. 2d 1137, 1140 (E.D. Mo. 2007).

## DISCUSSION

### I. CFAA in Count II

In Count II, Plaintiff attempts to allege a violation of the CFAA, 18 U.S.C. §1030(a)(4),[6] which provides:

> Whoever knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period shall be punished as provided in subsection (c) of this section.

Defendants contend that Count II under the CFAA fails to state a claim. First Defendants argue that Plaintiff does not allege any of the essential elements of a CFAA claim. Defendants argue that Plaintiff, for example, does not allege: that its computer system was hacked, that

---

[6] In its Amended Complaint, Plaintiff did not identify the specific the CFAA provision under which it was seeking relief. (ECF No. 12, ¶¶44-50). However, Plaintiff identified 18 U.S.C. §1030(a)(4) in its Response to Defendants' Motion to Dismiss. (ECF No. 15).

Horton did not have authorization to access information, that information was deleted or destroyed, that there was any service interruption, or that a computer was taken and not returned. (ECF No. 14 at 6). In addition, Defendants maintain that Plaintiff fails to allege that its claimed damages arose from any of the above-discussed the CFAA violations. (Id.) Defendants state that Plaintiff has not identified how any damage was done to it through Horton's alleged use of Plaintiff's computer systems. (Id.) Defendants note that Plaintiff alleges that Horton used Plaintiff's system to create loan applications, insurance applications, and tax returns containing false and deceptive information, but Defendants maintain that Plaintiff has not identified what information was false or deceptive or how the alleged acts are the cause of Plaintiff's damages. (Id.)

Plaintiff asserts that it has alleged all of the elements of a CFAA action under §1030(a)(4). Plaintiff states that it alleged that Horton "intentionally" and "knowingly," and "with intention of defrauding DeWitt Insurance," "exceeded his authorization to access DeWitt Insurance's protected computers," and as a result "thereby obtain[ed] inflated commissions from DeWitt Insurance in an amount at least 33.33% more than Zigzak, Inc. was entitled to." (ECF No. 15 at 3 (citing Amended Complaint, ¶¶8-35, 46, 48, 49)). In support of its damages allegation, Plaintiff notes that it alleged "Horton's unauthorized access proximately caused DeWitt Insurance loss in excess of $5,000 during a one-year period. Specifically, DeWitt Insurance suffered loss in the amount of 20% of all the commissions DeWitt Insurance paid to Zigzak, Inc." (ECF No. 15 at 3 (citing Amended Complaint, ¶50)). Plaintiff expansively claims that this allegation qualified as a "loss" under the CFAA because a loss is defined only as "any reasonable cost to any victim." Plaintiff claims that the descriptions of "loss" in §1030(e)(11) after the word "including" are only "examples." (ECF No. 15 at 4); see 18 U.S.C. §1030(e)(11).

"The CFAA criminalizes various fraudulent or damaging activities related to the use of computers." Fiber Sys. Int'l v. Roehrs, 470 F.3d 1150, 1156 (5th Cir. 2006). A claim "alleging a violation of Section 1030(a)(4) requires a showing that the defendant: (1) accessed a protected computer, (2) without authorization or exceeding such authorization that was granted, (3) knowingly and with intent to defraud, and thereby (4) furthered the intended fraud and obtained anything or value, causing (5) a loss to one or more persons during any one-year period aggregating at least $5,000 in value." Absolute Energy Solutions, LLC v. Trosclair, CIV.A. H-13-3358, 2014 WL 360503, at *2 (S.D. Tex. Feb. 3, 2014)(internal quotations and citations omitted). The CFAA recognizes "private causes of action for individuals damaged by computer fraud: 'Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief.'" In re AOL, Inc. Version 5.0 Software Litig., 168 F. Supp. 2d 1359, 1368 (S.D. Fla. 2001) (quoting 18 U.S.C. § 1030(g)). The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. §1030(e)(11).

The Court finds that Plaintiff's Amended Complaint fails to allege a "loss" as defined under the CFAA. "The weight of relevant authority restricts the CFAA 'loss' requirement to actual computer impairment." Harley Auto. Grp., Inc. v. AP Supply, Inc., CIV. 12-1110 DWF/LIB, 2013 WL 6801221, at *6 (D. Minn. Dec. 23, 2013)(citing ReMedPar, Inc. v. AllParts Med., LLC, 683 F.Supp.2d 605, 614–15 (M.D. Tenn. 2010) ("investigation" of alleged wrongful acts and costs incurred not "loss" under the CFAA; injuries associated with the misappropriation

of confidential information not "loss" under the CFAA); Von Holdt v. A–1Tool Corp., 714 F.Supp.2d 863, 875–76 (N.D.Ill.2010) (noting that the purpose of the CFAA is to punish those who destroy data, not to cover a former employee who "walks off with confidential information"); Am. Fam. Mut. Ins. Co. v. Rickman, 554 F.Supp.2d 766, 772 (N.D. Ohio 2008) ("The CFAA does not contemplate consequential damages ... that are unrelated to harm to the computer itself."); Civic Ctr. Motors, Ltd. v. Mason St. Import Cars, Ltd., 387 F.Supp.2d 378, 382 (S.D. N.Y. 2005) ("[C]osts not related to computer impairment or computer damages are not compensable under the CFAA.")).

Here, Plaintiff has not alleged "loss" due to any impairment to its computer systems or any interruption in service. Instead, Plaintiff alleges that "Horton's unauthorized access proximately caused … DeWitt Insurance [to] suffer[] loss in the amount of 20% of all commissions DeWitt Insurance paid to Zigzak, Inc." (Amended Complaint, ¶50). Plaintiff has alleged only economic harm due to its overpayment of commissions because of Defendants' fraud. The Court finds that Plaintiff's alleged "loss" for overpayment of commissions was not proximately caused by Defendants' use of Plaintiff's computer systems. Further, Plaintiff's alleged financial injury is not the type of "loss" contemplated by the CFAA because it does not relate to either responding to the offense or consequential damages due to interruption of service. See NCMIC Fin. Corp. v. Artino, 638 F. Supp. 2d 1042, 1063-64 (S.D. Iowa 2009)("Courts have interpreted 'loss' to include the cost of responding to a security breach, such as the cost of performing a computer system damage assessment, even if the losses are not derived from any change to the computers themselves or the information contained on the computer.")(citing cases); Nexans Wires S.A. v. Sark-USA, Inc., 166 F. App'x 559, 562 (2d Cir. 2006)("the plain language of the statute treats lost revenue as a different concept from incurred costs, and permits

recovery of the former only where connected to an 'interruption in service.'"). The Court finds that Plaintiff's alleged loss of a percentage of commissions that DeWitt paid to Zigzak (Amended Complaint, ¶50) is too attenuated from Defendants' use of Plaintiff's computer systems. Therefore, the Court holds that Plaintiff does not state a cognizable "loss" under the CFAA and dismisses Plaintiff's claim under the CFAA.

## II. RICO in Count IV

In Count IV, Plaintiff purports to allege a RICO claim against Defendants. Section 1962 of the RICO Act makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Nitro Distrib., Inc. v. Alticor, Inc., 565 F.3d 417, 428 (8th Cir. 2009) (quoting 18 U.S.C. § 1962(c)). The federal RICO statute "provides a private right of action for any person injured in his business or property by reason of [a RICO violation]." Crest Const. II, Inc. v. Doe, 660 F.3d 346, 353 (8th Cir. 2011) (internal quotation marks and citation omitted); 18 U.S.C. § 1964(c). To demonstrate a RICO violation, the plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Crest Constr. II, Inc., 660 F.3d at 353 (internal quotation marks and citation omitted). In order to prove the last two elements, a plaintiff must demonstrate that the defendant committed at least two predicate acts of racketeering which are delineated in the statute. 18 U.S.C. §§ 1961(1), (5).

For predicate acts of racketeering, Plaintiff alleges Defendants committed mail fraud and wire fraud, in violation of 18 U.S.C. §1341 (wire fraud) and 18 U.S.C. §1341 (mail fraud), on numerous occasions from 2000 through 2011. (ECF No. 15 at 10-11). Plaintiff alleges several

instances where Defendants used the internet, interstate emails, telephone calls to promote their fraud. (Amended Complaint, ¶31).

Defendants contend that Plaintiff's RICO claim fails because it did not allege the RICO claim with the particularity required under Rule 9(b) and because it has not stated the essential elements of a RICO claim. Because the Court finds that Plaintiff did not allege a "pattern of racketeering" the Court will dismiss Plaintiff's RICO claim.

### A. Particularity under Rule 9(b)

With respect to allegations of mail or wire fraud such as those contained in the Complaint, Rule 9(b) requires a party alleging fraud to state with heightened "particularity" the circumstances constituting fraud or mistake. Crest Constr. II, Inc., 660 F.3d at 353. In other words, Rule 9(b) requires plaintiffs to plead 'the who, what, when, where, and how: the first paragraph of any newspaper story.'" Summerhill v. Terminix, Inc., 637 F.3d 877, 880 (8th Cir. 2011)(citing Great Plains Trust Co. v. Union Pac. R.R. Co., 492 F.3d 986, 995 (8th Cir. 2007)). "Federal courts have long held civil RICO complaints to a somewhat higher standard of pleading and required a plaintiff to 'specifically identify, and factually plead, each element of a viable RICO claim.'" Crest Const. II, Inc. v. On Time Auto, 07-0728-CV-W-DGK, 2010 WL 3456690, at *1 (W.D. Mo. Aug. 27, 2010) aff'd sub nom. Crest Const. II, Inc. v. Doe, 660 F.3d 346 (8th Cir. 2011)(quoting Gregory P. Joseph, Civil RICO: A Definitive Guide § 23, at 207 (3rd ed. 2010)).

In their motion, Defendants claim that Plaintiff has not alleged the predicate acts, mail and wire fraud, with particularity and only pleaded a pattern of racketeering activity in a conclusory manner. (ECF No. 14 at 8; ECF No. 16 at 8). Defendants note that "[t]here is no particularity as to what specific items of mail and wire fraud are alleged, how any of the alleged

e-mails, telephone calls or mailings were fraudulent, when they specifically occurred, what they contained, when they happened or who did them." (ECF No. 14 at 8-9). Defendants assert that Plaintiff's Amended Complaint contains only formulaic statements that Defendants committed mail and wire fraud, and fails to provide any details as to how this allegedly injured Plaintiff. (Id. at 9). In sum, Defendants contend that Plaintiff's purported RICO action is merely a dressed-up garden variety tort claim, and a RICO claim is not pleaded simply because of Defendants' incidental use of mails and wires. (Id. at 9-10).

In response, Plaintiff asserts that it has sufficiently identified the "who, what, when, where and how" of its RICO claim, as required by Fed.R.Civ.P. 9(b). (ECF No. 15 at 6-9); see also Crest Const. II, Inc., 660 F.3d at 353; Summerhill, 637 F.3d at 880. Plaintiff notes that Horton, in Missouri, used interstate telephone calls on an almost daily basis from 2000 until 2011 to DeWitt's employees, DePond and Bommarito in Florida or Texas, and Horton sent interstate emails to DePond, Bommarito and Denise Lowery. (ECF No. 15 at 10). In addition, Plaintiff made interstate telephone calls and sent interstate emails almost daily from July 2000 through January 2012 to DeWitt personnel about his sales and commission. (Id.). Plaintiff further notes that as a result of these actions, DeWitt sent Zigzak a commission check through the U.S. Mail or direct deposit every month from July 2000 through January 2012. (Id.) Specifically, Plaintiff alleges that Defendants used interstate emails and telephone calls in the first part of 2000 to form Zigzak; Defendants exchanged monthly emails from 2000 until 2011 with John DePond and Lowery at DeWitt to report Zigzak's sales and commissions; and Defendants used monthly interstate telephone calls between Horton and DePond and between Horton and Theresa Bommarito to report Zigzak's sales and commissions. (Amended Complaint, ¶65). Plaintiff allege that Defendants employed the United States Mail, the internet, email, and

telephone, which constitutes mail fraud and wire fraud, in violation of 18 U.S.C. §1961(1)(B). (Amended Complaint, ¶66).

The Court holds that the circumstances allegedly constituting the fraud are stated with sufficient particularity as required by Rule 9(b). Plaintiff alleges the approximate dates that the mail and wire frauds occurred. Plaintiff also alleges the parties involved in setting up Zigzak, the parties who made the monthly telephone calls, and the parties that received the monthly excessive commission checks. Based upon these allegations, the Court finds that the allegedly fraudulent scheme is set out with sufficient reference to the who, what, when, where and how and, therefore, is unpersuaded that Plaintiff's pleading should be dismissed for failure to comply with Rule 9(b).

### B. Pattern of Racketeering

By statute, the "pattern" element requires a plaintiff to show at least two predicate acts of "racketeering activity," which is defined to include violations of specified federal laws, such as the mail and wire fraud statutes. See 18 U.S.C. § 1961(1)(B),(5). "Although showing two predicate acts is the only statutory requirement, case law establishes that this is not sufficient to prove a 'pattern'-the plaintiff also must demonstrate that the 'predicates are related, *and* that they amount to or pose a threat of continued criminal activity.'" Efron v. Embassy Suites (Puerto Rico), Inc., 223 F.3d 12, 15 (1st Cir. 2000)(quoting H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)); see also Sutherland v. O'Malley, 882 F.2d 1196, 1203 (7th Cir. 1989); see Craig Outdoor Adver., Inc., v. Viacom Outdoor, Inc., 528 F.3d 1001, 1028 (8th Cir.2008)("[T]o prove a pattern of racketeering activity a plaintiff ... must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity.")(emphasis in original). "Courts must examine a number of relevant

factors when determining whether the predicate acts alleged are sufficiently continuous to constitute a pattern; these factors include the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." Sutherland, 882 F.2d at 1204 (internal quotations omitted). "The determination of a pattern of racketeering activity is a factual determination." Terry A. Lambert Plumbing, Inc. v. W. Sec. Bank, 934 F.2d 976, 980 (8th Cir. 1991)(citing H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 242, 109 S. Ct. 2893, 2902, 106 L. Ed. 2d 195 (1989)). "The specific facts of each case must be examined to determine whether the predicate acts relied upon by the plaintiff establish a threat of continuing racketeering activity." Terry A. Lambert Plumbing, Inc., 934 F.2d at 980 (quoting Sutherland, 882 F.2d at 1204). "However, RICO 'does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity.'" Crest Const. II, Inc, 660 F.3d at 353 (citing Gamboa v. Velez, 457 F.3d 703, 705 (7th Cir.2006)).

Defendants argue that Plaintiff fails to plead a pattern of racketeering activity. (ECF No. 16 at 7). Defendants assert that mail and wire fraud, without more, does not amount to a RICO claim. (ECF No. 16 at 7-8). Further, Defendants maintain that Plaintiff has failed to identify what fraudulent misrepresentations were made in the emails and telephone calls that form the basis of the alleged RICO claim. (ECF No. 16 at 8).

In response, Plaintiff asserts that it has alleged a pattern of racketeering activity through Defendants' activities from July 2000 through January 2012. (ECF No. 15 at 9). Plaintiff alleges a common purpose of defrauding DeWitt out of portions of commissions. (Amended Complaint, ¶63). Plaintiff claims that Horton accomplished this end through "almost daily" interstate telephone calls and emails with DeWitt personnel from 2000 until 2011. (ECF No. 15 at 9).

Plaintiff emphasizes that a pattern is established because Zigzak received commission checks every month for 139 months. (Id.).

Assuming for the sake of argument that commission payments by different checks can constitute multiple predicate acts, the Court nonetheless finds that Plaintiff cannot state a claim under RICO because it has failed to allege the necessary pattern of racketeering activity.

In H.J. Inc. v. Nw. Bell Tel. Co., the Supreme Court rejected a multiple scheme test for the continuity prong of a RICO pattern. H.J. Inc., 492 U.S. 229, 240 (1989). Although the Court acknowledges that under H.J. a single scheme can constitute a RICO claim, the "single scheme must still meet the requirements of relatedness and continuity." Terry A. Lambert Plumbing, Inc., 934 F.2d at 981; Larry Good & Associates v. Williams & Co. Consulting, 8:06CV280, 2006 WL 3257180, at *2 (D. Neb. Nov. 9, 2006) ("The Company must allege a pattern of racketeering activity to show continuing activities and distinct schemes in excess of a single injury, which is more than garden variety fraud."). "A single 'scheme' may be reached by RICO, see H.J. Inc., 492 U.S. at 240-41, 109 S.Ct. 2893, but only if it is reasonably broad and far reaching." Sys. Mgmt., Inc. v. Loiselle, 303 F.3d 100, 105 (1st Cir. 2002). "[W]hile acknowledging H.J.'s teaching, … a number of courts since that decision have found the continuity prong to be absent for allegations involving unlawful activities too small in scale or scope." AB Mauri Food, Inc. v. Harold, 4:07CV811-DJS, 2008 WL 878451, at *3 (E.D. Mo. Mar. 27, 2008)(citing Edmondson & Gallagher v. Alban Towers Tenants Ass'n, 48 F.3d 1260, 1265 (D.C.Cir.1995); Western Associates Limited Partnership v. Market Square Associates, 235 F.3d 629, 634 (D.C.Cir.2001); Efron v. Embassy Suites (Puerto Rico), Inc., 223 F.3d 12, 18-19 (1st Cir.2000)). The Eighth Circuit has reasoned that "'it places a real strain on the language [of RICO] to speak of a single fraudulent effort, implemented by several fraudulent acts, as a pattern of racketeering activity.'"

Associated Petroleum Producers, Inc. v. Treco 3 Rivers Energy Corp., 692 F.Supp. 1070, 1072 (E.D. Mo. 1988) (quoting Superior Oil Co. v. Fulmer, 785 F.2d 252, 257 (8th Cir.1986)).

Although Plaintiff has alleged that Defendants engaged in multiple fraudulent acts, the Court holds that the email, mail and wire transfers utilized by Defendants are insufficient to establish a pattern of racketeering because they were, at most, performed as part of a single effort to defraud Plaintiff of some commissions and do not sufficiently allege continuity. (Amended Complaint, ¶67). The alleged predicate acts are Defendants' alleged mail and wire fraud to set up Zigzak and obtain excessive commissions from Plaintiff. Plaintiff's Amended Complaint does not allege that Defendants acted in regard to any other victims, nor does it allege a threat of continued fraudulent activity. Plaintiff has alleged merely a "narrow criminal episode," even if the regular mailings and wire transfers may constitute several injuries. Sys. Mgmt., Inc., 303 F.3d at 105; Larry Good & Associates, 2006 WL 3257180, at *2 (citing Madden v. Gluck, 815 F.2d 1163, 1163 (8th Cir.1987))("Injury resulting from mere subdivisions of one fraudulent scheme is not sufficient to form a pattern of racketeering activity."). There is no allegation that Defendants' fraud or alleged racketeering activity will continue as to Plaintiff or that Defendants' activities threatened or will threaten any other victim. See H.J. Inc., 492 U.S. at 240 ("To establish a RICO pattern it must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity.")(emphasis in original). This case involves only one set of perpetrators, one victim and one fraudulent goal. Plaintiff alleges no "societal" threat, but rather a directed, targeted injury to a then-employer. See AB Mauri Food, Inc., 2008 WL 878451, at *4. "Viewing the complaint in the light most favorable to the plaintiff, this case involves, at most, a plan to defraud a single company in connection with a single contract." Larry Good & Associates, 2006 WL 3257180, at *3

(dismissing RICO civil claim). A single, fraudulent contractual business venture, which is narrowly tailored toward one victim does not constitute the pattern of racketeering required for criminal activity under a RICO claim. The Court finds that the alleged acts of everyday business emails and the monthly commission checks received by Horton/Zigzak are neither broad nor far reaching enough to constitute a pattern of racketeering under RICO. See Sys. Mgmt., Inc., 303 F.3d at 105.

Further, as noted by several circuit courts, this type of garden variety fraud does not state a claim under RICO simply because Defendants allegedly used the internet, interstate mail, and interstate wires to implement their fraud:

> Virtually every garden-variety fraud is accomplished through a series of wire or mail fraud acts that are 'related' by purpose and spread over a period of at least several months. Where such a fraudulent scheme inflicts or threatens only a single injury, we continue to doubt that Congress intended to make the availability of treble damages and augmented criminal sanctions dependent solely on whether the fraudulent scheme is well enough conceived to enjoy prompt success or requires pursuit for an extended period of time. Given its 'natural and common sense approach to RICO's pattern element,' we think it unlikely that Congress intended RICO to apply in the absence of a more significant societal threat.

Marshall–Silver Constr. Co., Inc. v. Mendel, 894 F.2d 593, 597 (3d Cir.1990); U.S. Textiles, Inc. v. Anheuser-Busch Companies, Inc., 911 F.2d 1261, 1268 (7th Cir. 1990); see also Menasco, Inc. v. Wasserman, 886 F.2d 681, 685 (4th Cir. 1989)(" If the pattern requirement has any force whatsoever, it is to prevent this type of ordinary commercial fraud from being transformed into a federal RICO claim."); Larry Good & Associates, 2006 WL 3257180, at *2 ("The Company must allege a pattern of racketeering activity to show continuing activities and distinct schemes in excess of a single injury, which is more than garden variety fraud."). "Repetitive fraudulent conduct by one set of perpetrators against a single victim, narrowly directed toward a single fraudulent goal-there as here recovering excessive commissions from plaintiff beyond those contemplated by the parties' agreement-is a 'garden variety fraud' rather than a 'pattern' with the

species of continuity required for RICO liability." AB Mauri Food, Inc., 2008 WL 878451, at *4; Secure Energy, Inc. v. Coal Synthetics, LLC, 4:08CV1719 JCH, 2010 WL 1691327, at *2 (E.D. Mo. Apr. 27, 2010). The Court finds that the fraud alleged in the Amended Complaint is simple, garden variety fraud and does not allege a pattern of racketeering for a RICO action. Applying a "natural and commonsense approach to RICO's pattern element," the Court believes that the facts alleged are no different from those alleged in any common, repetitive fraud claim. See H.J. Inc., 492 U.S. at 237.

Because the Court finds that Plaintiff has not alleged a pattern of racketeering, the Court grants Defendants' Motion to Dismiss the RICO count and dismisses Count IV under Fed.R.Civ.P. 12(b)(6) for failure to state a claim.

### III. State Law Claims

Federal Rule of Civil Procedure 12(b)(1) requires dismissal if the Court lacks subject matter jurisdiction over the claim. Plaintiff alleged that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331. The Court dismisses Counts II and IV, the only counts alleging claims under federal law. Plaintiff alleged that that this Court had supplemental jurisdiction under 28 U.S.C. §1367(a) over the remaining state law claims in Counts I, III, and V. Because this Court dismisses the federal claims, the Court declines to exercise supplemental jurisdiction over Counts I, III, and V. The Court also declines to rule on the pending motion to dismiss as to the state law claims. Such arguments can be addressed if the state law claims are refiled in state court.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Gregory R. Horton and Sarah A. King's Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim Upon Which Relief Can Be Granted And To Decline Supplemental Jurisdiction of State Claims [7] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendants Gregory R. Horton and Sarah A. King's Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim Upon Which Relief Can Be Granted And To Decline Supplemental Jurisdiction of State Claims [13] is **GRANTED**, in part, and **DENIED**, in part. The Court **DISMISSES** Counts II and IV for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). The Court **DISMISSES** Counts I, III, and V for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).

Dated this 28th day of May, 2014.

_____
**JOHN A. ROSS
UNITED STATES DISTRICT JUDGE**